Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,462-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

Versus

UNDRIO L. CHEFFIN                    Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 72,393

Honorable Bruce E. Hampton, Judge

* * * * *

LOUISIANA APPEALS AND WRIT SERVICE    Counsel for Appellant
By: Christopher A. Aberle

JOHN FITZGERALD BELTON                Counsel for Appellee
District Attorney

TRACY W. HOUCK
LEWIS ALLEN JONES
Assistant District Attorneys

* * * * *

Before PITMAN, STEPHENS, and MARCOTTE, JJ.

**STEPHENS, J.,**

This criminal appeal arises from the Third Judicial District Court, Parish of Lincoln, the Honorable Bruce E. Hampton, Judge, presiding. The defendant, Undrio L. Cheffin, was charged by bill of information on June 15, 2021, with aggravated flight from an officer, a violation of La. R.S. 14:108.1, and possession of a schedule II controlled dangerous substance, a violation of La. R.S. 40:967(C)(2). A jury found Cheffin guilty of aggravated flight from an officer, but not guilty of possession of a schedule II controlled dangerous substance. On August 19, 2021, the State filed a habitual offender bill pursuant to La. R.S. 15:529.1. Cheffin entered into a plea agreement approved by the trial court on September 13, 2022; and, pursuant to the agreement, *inter alia*, he was sentenced to 20 years at hard labor. For the following reasons, we affirm Cheffin's conviction but remand with instructions as it relates to the commitment order.

## FACTS AND PROCEDURAL HISTORY

On November 28, 2018, Deputy Brian McGowan with the Lincoln Parish Sheriff's Office observed the defendant, Cheffin, traveling in a green Chevrolet Caprice. After following Cheffin for a period a time, Dep. McGowan witnessed Cheffin braking. The deputy noticed that Cheffin's brake lights glowed white instead of the required red. Following this observation, Dep. McGowan initiated a traffic stop at the intersection of Best Road and Highway 507 in Simsboro, Louisiana. Although Cheffin initially pulled over, he drove away as Dep. McGowan approached the vehicle. Dep. McGowan then returned to his patrol unit to pursue Cheffin.

During the high-speed pursuit by Dep. McGowan, Cheffin allegedly ran a stop sign, veered into the center of the road and into the opposing lane,

and traveled into the opposing lane of traffic. Dep. McGowan made contact with Cheffin's vehicle, which stopped in the ditch perpendicular to Dep. McGowan's patrol unit. Cheffin then exited his vehicle and fled on foot. Dep. McGowan pursued Cheffin on foot and, after closing the distance between himself and Cheffin, deployed one five-second cycle of his taser. Dep. McGowan then placed Cheffin under arrest and read him his *Miranda* rights. During his search of the area, Dep. McGowan found a glass pipe containing methamphetamine.

On June 15, 2021, Cheffin was charged by bill of information with aggravated flight from an officer where human life is endangered, a violation of La. R.S. 14:108.1, and possession of a schedule II controlled dangerous substance, a violation of La. R.S. 40:967(C)(2). An amended bill of information was filed on July 9, 2021, to clarify that Cheffin was in possession of less than two grams of a schedule II controlled dangerous substance. A jury trial commenced on August 9, 2021. At the trial, Dep. McGowan testified about the events that led to Cheffin's arrest.

In his testimony, Dep. McGowan led the jury through dash camera footage from his unit showing the encounter. He testified that he traveled at speeds of between 90 mph and 97mph when trying to catch up to Cheffin's vehicle. Dep. McGowan also noted in the footage where Cheffin's vehicle was in the center of the roadway. Dep. McGowan then showed the jury where Cheffin was traveling through a rural, residential area when it nearly made contact with a vehicle that was backing out of a private driveway. Dep. McGowan stated that at that point in the footage, he was traveling at 95 mph, and the footage indicated that Cheffin's vehicle was in the opposing travel lane, blocking the roadway for any opposing traffic. Dep. McGowan

2

also testified that Cheffin ran a stop sign and ran off the road into the grass and leaves. To prevent Cheffin from turning down a different road, Dep. McGowan stated that he moved his vehicle to the left side of Cheffin's vehicle. It was during this time that Cheffin's vehicle and Dep. McGowan's unit made contact. Dep. McGowan testified that the contact was "probably mutual," but he did not intentionally strike Cheffin's vehicle at that time.

Dep. McGowan testified and the dash camera footage showed that towards the end of the pursuit, Cheffin was opening his driver's door, which indicated to Dep. McGowan that Cheffin was about to exit the vehicle. Dep. McGowan stated that to prevent this, he attempted to bring his unit behind Cheffin, but the vehicles ultimately collided. Although the result of this was similar to a PIT maneuver, Dep. McGowan stated that he had not intended to perform that technique. After Cheffin's vehicle stopped and he exited the vehicle, Dep. McGowan pursued Cheffin on foot. Dep. McGowan testified he was able to deploy his taser to subdue Cheffin. Dep. McGowan stated that after he placed Cheffin in custody, he retraced Cheffin's path from the foot pursuit and found a glass pipe that was undisturbed and the only trash-like substance in the area. Dep. McGowan stated that methamphetamine was ultimately scraped from the pipe.

Following closing arguments, the trial court instructed the jury that if it was not convinced Cheffin was guilty of aggravated flight from an officer, it could find Cheffin guilty of a lesser offense, then listed the responsive lesser offenses, including flight from an officer. On August 10, 2021, the jury returned a unanimous verdict, finding Cheffin guilty of aggravated flight from an officer. However, the jury found that Cheffin was not guilty of possession of a schedule II controlled dangerous substance.

3

On August 19, 2021, the State filed a bill of information charging Cheffin as a fourth felony offender.[1] On September 14, 2021, Cheffin filed several motions, including a (1) motion for new trial; (2) motion in arrest of judgment; (3) motion for post-verdict judgment of acquittal; (4) motion to quash habitual offender bill/deviation on habitual offender bill below the statutory minimum; and (5) motion for discovery. The trial court denied the motion for new trial, motion in arrest of judgment, and motion for post-verdict judgment of acquittal on October 12, 2021. On November 9, 2021, the trial court sentenced Cheffin to five years at hard labor with credit for all time served on his conviction of aggravated flight from an officer.

On September 13, 2022, the trial court held a habitual offender hearing. The court was informed that the State and Cheffin had entered into an agreement whereby Cheffin admitted his status as a fourth felony offender with an agreed-upon sentence of 20 years at hard labor. A previous charge of aggravated assault with a firearm was dismissed pursuant to the agreement. The trial court set aside the original five-year sentence imposed for conviction of aggravated flight from an officer and imposed a sentence of 20 years at hard labor pursuant to the plea agreement. Cheffin agreed to plead guilty in a separate case to distribution of a schedule II controlled

---

[1] The bill of information alleged that Cheffin had the following previous convictions:

1. Distribution of Schedule I;
2. Possession of Marijuana – 2nd offense and Possession of Schedule IV with Intent;
3. Unauthorized Use of Access Card;
4. Forgery – 2 counts.

The bill further alleged that his latest felony conviction occurred within ten years of the expiration of the maximum sentences of the previous convictions.

dangerous substance,[2] and the sentence imposed in that matter was eight years at hard labor to be served consecutively to his 20-year sentence. The trial court informed Cheffin that he was waiving his right to appeal the 20-year sentence because it was an agreed-upon sentence.

On February 23, 2023, Cheffin filed a *pro se* motion to vacate judgment and harsh sentencing. On March 14, 2023, the court held a hearing wherein it advised Cheffin that he maintained the right to appeal his conviction, but he waived his right to appeal his sentence. The trial court then denied Cheffin's motion to vacate the judgment. Cheffin now appeals his conviction.

## DISCUSSION

In his sole assignment of error, Cheffin claims that the State failed to prove beyond a reasonable doubt that he was guilty of aggravated flight from an officer. More specifically, Cheffin maintains that the State failed to prove that he committed at least two of the qualifying acts in La. R.S. 14:108.1(D) to satisfy the circumstances wherein a human life is endangered. Although Cheffin admits to failing to obey a stop sign, he contends that no second qualifying act was committed; therefore, the State failed to prove beyond a reasonable doubt that he is guilty of aggravated flight from an officer.

In response, the State urges that the evidence established that Cheffin exceeded the posted speed limits by at least 25 mph, traveled against the flow of traffic, left the roadway, and failed to obey a stop sign during the pursuit. As a result, Cheffin's actions demonstrated a willful refusal to stop,

---

[2] Trial Court Docket No. 75,687.

and the evidence supports his conviction of aggravated flight from an officer.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884; *State v. Lewis*, 54,948 (La. App. 2 Cir. 4/5/23), 361 So. 3d 65. *See also* La. C. Cr. P. art. 821. This standard does not provide an appellate court with a vehicle for substituting its appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So. 2d 1165; *State v. Lewis*, *supra*.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. *Id*. The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

For Cheffin's conviction to be upheld, the record must establish that the State proved beyond a reasonable doubt all the essential elements of

aggravated flight from an officer. *See State v. Lewis*, *supra*. La. R.S.

14:108.1 defines aggravated flight from an officer, in pertinent part, as

follows:

> C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop [...], under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle [...].

> D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle [...] commits at least two of the following acts:

>> (1) Leaves the roadway or forces another vehicle to leave the roadway.
>> (2) Collides with another vehicle or watercraft.
>> (3) Exceeds the posted speed limit by at least twenty-five miles per hour.
>> (4) Travels against the flow of traffic [...].
>> (5) Fails to obey a stop sign or a yield sign.
>> (6) Fails to obey a traffic control signal device.

Dep. McGowan testified that he initiated the traffic stop due to

Cheffin's broken taillight. Dep. McGowan's dashcam footage shows that as

he approached the vehicle, Cheffin drove off, and the deputy began his high-

speed pursuit. The footage further shows that Dep. McGowan was in a

marked police vehicle and that his lights and sirens were activated during the

pursuit. He also identified Cheffin as the driver of the vehicle. Although

Dep. McGowan's visible and audible signals were engaged, the record

shows that Cheffin refused to bring his vehicle to a stop, a clear violation of

La. R.S. 14:108.1(C).

Despite Cheffin's claims that the State failed to prove a second

qualifying act satisfying the circumstances wherein human life is

endangered, the record clearly establishes that Cheffin not only failed to obey a stop sign, but he also committed other acts enumerated in La. R.S. 14:108.1(D). Dep. McGowan stated multiple times throughout his testimony that the speeds of travel reflected on the dashcam footage were 90, and 95, and 97 mph during his pursuit. Not only does the dashcam footage reflect these speeds of travel, but the footage also depicts Cheffin traveling in the center of the roadway and drifting into the opposing lane of travel. Similarly, the footage shows Cheffin swerving off the roadway at one point during the pursuit. Given the testimony and dashcam footage, the record clearly supports that Cheffin left the roadway, exceeded the speed limit by at least 25 mph, traveled against the flow of traffic, and failed to obey a stop sign.

After viewing the facts as established by the evidence and testimony in the light most favorable to the prosecution, any rational trier of fact could have concluded that Cheffin's actions satisfy the elements necessary for a conviction of aggravated flight from an officer. This assignment of error is without merit.

**ERROR PATENT REVIEW**

Although the trial court articulated during the habitual offender sentencing hearing that it rescinded Cheffin's original five-year sentence imposed for aggravated flight from an officer, the commitment order signed on September 16, 2022, following the habitual offender hearing does not reflect that this five-year sentence was vacated. While the minutes show that the sentence was rescinded and set aside, the commitment order must also show that the five-year sentence was vacated. As such, we remand this matter to the trial court to correct the commitment order.

8

**CONCLUSION**

For the reasons expressed, Undrio L. Cheffin's conviction is affirmed. However, this matter is remanded to reflect the setting aside of the five-year sentence on the commitment order.

**AFFIRMED, IN PART; REMANDED WITH INSTRUCTIONS.**